FILED
02/06/2019
Clerk of the
Appellate Courts

IN THE COURT OF APPEALS OF TENNESSEE
AT KNOXVILLE
December 5, 2018 Session

## RAFIA N. KHAN, INDIVIDUALLY, AND IN HER CAPACITY AS TRUSTEE OF THE RAFIA N. KHAN IRREVOCABLE TRUST v. REGIONS BANK

Appeal from the Chancery Court for Knox County
No. 173193-2      Clarence E. Pridemore, Jr., Chancellor

_____

### No. E2018-01173-COA-R3-CV
_____

This is the fourth appeal arising from a disputed arbitration award in favor of Regions Bank (the Bank) "against Rafia N. Khan, individually, and as trustee" of the Rafia N. Khan Irrevocable Trust (the Trust). Pursuant to this Court's mandate in the first appeal, the trial court entered an order confirming the arbitration award "as to the Rafia N. Khan Irrevocable Trust and to Rafia N. Khan as Trustee of the Rafia N. Khan Irrevocable Trust." Later, the trial court entered an order granting the Bank $72,156 in attorney's fees and $2,094.05 in costs. Of that amount, the court assessed $45,928.92 against the Trust and assessed $28,321.13 against Ms. Khan individually. Ms. Khan's notice of appeal states that she is appealing (1) the trial court's order confirming the arbitration award; (2) the court's order granting the Bank attorney's fees and costs; and (3) the court's order denying Ms. Khan's motion to alter or amend. We affirm the trial court's order confirming the arbitration award pursuant to the law of the case doctrine. We modify the court's order awarding attorney's fees. The award shall include attorney's fees incurred by the Bank in the trial court and on direct appeal but not attorney's fees incurred by the Bank in federal bankruptcy court proceedings.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Chancery Court
Affirmed as Modified; Case Remanded**

CHARLES D. SUSANO, JR., J., delivered the opinion of the court, in which JOHN W. MCCLARTY and THOMAS R. FRIERSON, II, JJ., joined.

Dan D. Rhea, Knoxville, Tennessee, for the appellant, Rafia N. Khan, individually, and in her capacity as Trustee of The Rafia N. Khan Irrevocable Trust.

Michael Kelley, Knoxville, Tennessee, for the appellee, Regions Bank.

**OPINION**

**I.**

We explained the facts underlying the parties' arbitration dispute in ***Khan v. Regions Bank***, 461 S.W.3d 505 (Tenn. Ct. App. 2014) [hereinafter ***Khan I***]:

> Mr. and Mrs. Khan obtained a joint line of credit from the Bank's predecessor secured by a deed of trust on residential property. Mrs. Khan had bought the property in 2004, and, later in 2004, she quitclaimed it to the Rafia N. Khan Irrevocable Trust. This property is where Mrs. Khan and her two children live. The joint line of credit dates from 2006, and it provided for credit up to $80,000. Mrs. Khan signed the credit agreement and disclosure in her individual capacity and signed the deed of trust both in her individual capacity and on behalf of the Trust.
>
> In 2008, Mrs. Khan wanted to close the line of credit. There was some issue about whether or when the paperwork necessary to close the line of credit was processed finally. Before the final processing, Mr. Khan transferred $40,000 from the joint line of credit to his checking account. Mrs. Khan apparently was not consulted and did not approve of this move. The Khans have since divorced.

*Id.* at 506-07.

When the Bank refused to release the lien on the residential property, Ms. Khan, acting in her individual capacity and as trustee of the Rafia N. Khan Irrevocable Trust, filed suit against the Bank. *Id.* at 507. She alleged that the Bank's refusal to release the lien was an "unfair act" under the Tennessee Consumer Protection Act (TCPA). *Id.* The parties subsequently agreed to resolve the dispute through arbitration, as required by the loan documents. *Id.*

The arbitrator found that Ms. Khan was not personally liable for the $40,000 loan made to her husband and that the Bank did not violate the TCPA. *Id.* To Ms. Khan's displeasure, however, the arbitrator declined to order the Bank to release the lien on the residential property. *Id.* Because Mr. Khan was never made a party to the arbitration,[1]

---

[1] As we noted in ***Khan I***, "[t]he Bank attempted to add Mr. Khan as a party to the arbitration, a move Mrs. Khan successfully opposed." *Id.* at 507. This proved fatal to Ms. Khan's case: "Having successfully kept Mr. Khan from being a party to the arbitration, she cannot now argue that the Arbitrator

the arbitrator concluded that he lacked the authority "to decide whether or not Mr. Khan remains liable to Regions Bank on the line of credit or on some other basis" and "to decide whether the Deed of Trust secures any such indebtedness Mr. Khan may have to Regions Bank." *Id.* Finally, pursuant to a contractual provision in loan documents, the arbitrator awarded the Bank $25,995.54 in attorney's fees and costs "against Mrs. Khan, individually and as Trustee." *Id.* at 508. Shortly thereafter, the Bank filed a petition in the trial court to confirm the arbitration award. Ms. Khan filed a competing motion to vacate the award. The trial court denied the Bank's petition and granted Ms. Khan's motion to vacate the award. The Bank appealed.

During the pendency of the appeal in *Khan I*, Ms. Khan filed for bankruptcy in the U.S. Bankruptcy Court for the Eastern District of Tennessee. In May 2011, Ms. Khan received a discharge of her debts in bankruptcy. The Bank filed a proof of claim in the bankruptcy case, which included the arbitration award. In response, Ms. Khan initiated an adversary proceeding in the bankruptcy court, challenging the Bank's proof of claim. Ms. Khan's First Amended Complaint asked the bankruptcy court to disallow the arbitration award, in part, because the trial court had already vacated the award. The bankruptcy court dismissed Ms. Khan's adversary proceeding on jurisdictional grounds. *In re Khan*, No. 11–3186, 2011 WL 4543962 (Bankr. E.D. Tenn., filed Sept. 29, 2011). Ms. Khan appealed to the U.S. District Court for the Eastern District of Tennessee, which affirmed the decision of the bankruptcy court. *In re Khan*, No. 3:12–cv–00025, 2012 WL 5381444 (E.D. Tenn., filed Oct. 31, 2012). Ms. Khan subsequently appealed to the U.S. Court of Appeals for the Sixth Circuit, which also affirmed. *In re Khan*, 544 Fed. App'x 617 (6th Cir. 2013). Finally, Ms. Khan filed a petition for certiorari with the U.S. Supreme Court. Her petition was denied. *Khan v. Regions Bank*, 572 U.S. 1016 (2014).

In November 2014, this Court announced its decision in *Khan I*. We reversed the judgment of the trial court and remanded the case with instructions to confirm the arbitration award. *Khan*, 461 S.W.3d at 512. Because Ms. Khan was granted a discharge of her debts in bankruptcy during the pendency of the appeal, we directed the trial court "to enter an order confirming the Arbitrator's award but only as to the Rafia N. Khan Irrevocable Trust[.]" *Id.* at 508-09, 512. Ms. Khan sought discretionary review of our decision with the Tennessee Supreme Court and the United States Supreme Court; both courts declined to hear the case. *Khan v. Regions*, 136 S. Ct. 129 (2015) (denying petition for certiorari); *Khan*, 461 S.W.3d 505 (Tenn. Ct. App. 2014), *perm. app. den.* (Tenn. 2015).

After our decision in *Khan I*, but before the trial court had entered an order confirming the arbitration award, Ms. Khan filed another complaint against the Bank

exceeded his powers in failing to make determinations regarding Mr. Khan . . . ." *Id.* at 511.

- 3 -

(***Khan II***).  The trial court dismissed that complaint on the basis of the prior suit pending doctrine.  In a memorandum opinion, this Court affirmed the trial court's dismissal of ***Khan II***.  ***Khan v. Regions Bank***, No. E2015-01891-COA-R3-CV, 2016 WL 3094917 (Tenn. Ct. App., filed May 25, 2016).[2]

In September 2015, the Bank filed a motion with the trial court for an award of post-arbitration attorney's fees.  On October 16, 2015, before ruling on the Bank's motion, the trial court entered a self-styled "Final Judgment" confirming the arbitration award "as to the Rafia N. Khan Irrevocable Trust and to Rafia N. Khan as Trustee of the Rafia N. Khan Irrevocable Trust."  A few days later, the Bank filed certified copies of that order with the Knox County Register of Deeds in order to establish and maintain a judgment lien against the residential property.  The Bank has never sought to levy the property and has never filed a motion with the court to foreclose on its lien.

In June 2017, Ms. Khan filed a third complaint (***Khan III***) asking the trial court to set aside its judgment confirming the arbitration award in ***Khan I***.  First, Ms. Khan alleged that the court lacked personal jurisdiction to confirm the arbitration award against the Trust, which she claimed was never a party in the case.  Second, Ms. Khan alleged that the court's order was void under federal bankruptcy law to the extent that it imposed personal liability on Ms. Khan "as Trustee of the Rafia N. Khan Irrevocable Trust."  The Bank filed a Rule 12.02(6) motion to dismiss and raised the affirmative defense of res judicata.  After a hearing, the trial court granted the Bank's motion and dismissed the case on the basis of res judicata.  Ms. Khan appealed.

In May 2018, this Court announced its decision in ***Khan III***.  ***Khan v. Regions Bank***, No. E2017-02454-COA-R3-CV, 2018 WL 4566519 (Tenn. Ct. App., filed May 30, 2018), *perm. app. denied* (Tenn. 2019).  We reversed the trial court's ruling on the issue of res judicata because the order appealed from was not a final judgment.  ***Id.*** at *4 ("Because the trial court's October 16, 2015 order did not resolve the issue of post-arbitration attorney's fees, it was not a final judgment.").  Nevertheless, we affirmed the trial court's dismissal of the case because Ms. Khan's complaint failed to state a claim upon which relief could be granted.  ***Id.*** at *5-6.  It was apparent from Ms. Khan's complaint that the trial court properly exercised its jurisdiction over the Trust.  It was equally apparent that the arbitration award did not impose personal liability on Ms. Khan in violation of federal bankruptcy law.  ***Id.*** at *5.  Ms. Khan challenged these legal conclusions in a petition for rehearing, which this Court denied.  Ms. Khan subsequently filed an application for permission to appeal with the Tennessee Supreme Court. On January 18, 2019, the Supreme Court denied permission to appeal.

---

[2] Rule 10 of the Rules of the Court of Appeals provides that a memorandum opinion "shall not be published, and shall not be cited or relied on for any reason in any *unrelated* case." Tenn. Ct. App. R. 10 (emphasis added).  "Because the case at bar is a *related* case, we cite to our previous memorandum opinion only for procedural context." *See* ***Simmons v. Cheadle***, No. M2017–00494–COA–R3–CV, 2017 WL 4742971, at *1 n.1 (Tenn. Ct. App., filed Oct. 19, 2017) (emphasis added).

During the pendency of the appeal in ***Khan III***, the trial court revisited the issue of post-arbitration attorney's fees. Ultimately, the court entered an order granting the Bank $72,156 in attorney's fees and $2,094.05 in costs. The court assessed $45,928.92 against the Trust and assessed $28,321.13 against Ms. Khan individually. The court stated that the award against Ms. Khan individually was based solely upon the attorney's fees and costs incurred by the Bank in defending the adversary proceeding initiated by Ms. Khan in federal bankruptcy court. Ms. Khan filed a motion to alter or amend, which the trial court denied. This appeal followed.

## II.

We restate and consolidate the issues raised on appeal as follows:

> Whether we should affirm the trial court's order confirming the arbitration award pursuant to the law of the case doctrine.[3]

> Whether the trial court lacked subject matter jurisdiction to award the Bank attorney's fees incurred during federal bankruptcy court proceedings.

## III.

"The extent to which the law of the case doctrine precludes re-litigation of an issue decided in a prior appeal is a question of law, subject to de novo review." ***State ex rel. Dept. of Transp. v. Thomas***, No. W2013–02082–COA–R3–CV, 2014 WL 6992126, at *6 (Tenn. Ct. App., filed Dec. 11, 2014). In ***Gray's Disposal Co., Inc. v. Metropolitan Government of Nashville***, the Supreme Court explained the purpose and proper application of the law of the case doctrine:

> An appellate court's final decision in a case establishes the "law of the case" when a case is remanded for further proceedings. This "law of the case" is binding on the trial court during the remanded proceedings and is also binding on the appellate courts should a second appeal be taken after the trial court enters a judgment in response to the remand order. ***Memphis Publ'g Co. v. Tenn. Petroleum Underground***

---

[3] As explained later in this opinion, the first two "issues" raised by Ms. Khan are, in reality, arguments that the law of the case doctrine should not be applied. We construe her brief as requesting relief from the trial court's order confirming the award, which was entered pursuant to this Court's allegedly erroneous mandate in ***Khan I***.

- 5 -

> *Storage Tank Bd.*, 975 S.W.2d 303, 306 (Tenn. 1998). While
> the doctrine applies only to issues that were actually decided
> by the court, explicitly or implicitly, it does not apply to dicta.
> *Memphis Publ'g Co. v. Tenn. Petroleum Underground*
> *Storage Tank Bd.*, 975 S.W.2d at 306; *Ladd ex rel. Ladd v.*
> *Honda Motor Co.*, 939 S.W.2d 83, 90 (Tenn. Ct. App. 1996).

*    *    *

> Adhering to the "law of the case" doctrine promotes finality
> and efficiency in litigation, ensures consistent results in the
> same proceeding, and assures that lower courts follow the
> decision of higher courts. *State v. Jefferson*, 31 S.W.3d 558,
> 561 (Tenn. 2000); *Harrison v. Laursen*, 128 S.W.3d 204, 208
> (Tenn. Ct. App. 2003).

318 S.W.3d 342, 348 (Tenn. 2010).

The Supreme Court has also acknowledged that the doctrine is "neither a constitutional mandate nor an inflexible limit on the adjudicatory power of the courts." *Id.* (citations omitted). Instead, it is discretionary. *Id.* The Court has identified three situations in which the doctrine "does not necessarily apply":

> (1) when the evidence offered at a trial or hearing following
> the remand is substantially different from the evidence in the
> earlier proceeding;

> (2) when the prior decision was clearly erroneous and would
> result in manifest injustice if allowed to stand; or

> (3) when the prior decision is contrary to a change in the
> controlling law which has occurred between the first and
> second appeal.

*Id.* (citing *Memphis Publ'g Co.*, 975 S.W.2d at 306; *In re Estate of Boote*, 265 S.W.3d 402, 413 (Tenn. Ct. App. 2007)).

Here, Ms. Khan attempts to avoid application of the law of the case doctrine by arguing that this Court's decision in *Khan I* was "clearly erroneous and would result in manifest injustice if allowed to stand." *See id.* Specifically, Ms. Khan argues that this Court committed clear error (1) by concluding that the Court could exercise jurisdiction

- 6 -

over the Trust, "when 'the . . . Trust' was not, in fact, a party to that appeal"; and (2) by "mak[ing] that determination solely on the basis of a new argument that the [Bank] made in its Reply Brief."[4]  Both assertions of error are without merit.

First, the Bank did not raise a new argument in its reply brief.  The Bank's principal brief in **Khan I** addressed two issues:  (1) "Whether the Trial Court erred in vacating the final arbitration award issued by Arbitrator Robert P. Murrian pursuant to 9 U.S.C. § 10(a)(4) of the Federal Arbitration Act"; and (2) "Whether the Trial Court should have confirmed the final arbitration award."  In its brief, the Bank argued that the trial court erred by vacating the award based on its conclusion that the arbitrator exceeded his authority under federal law.  Because the trial court's decision was based solely on that determination, the Bank argued that resolution of that issue in the Bank's favor would leave "no impediment to the confirmation of the final award."  The brief concluded with a request that this Court "remand the case to the Trial Court with directions that the final award be confirmed."  As previously discussed, the "final award" was against "Rafia N. Khan, individually, and as trustee" of the Trust.

Ms. Khan then filed her principal brief.  Her brief's statement of issues raised the *additional* issue of whether the Bank lacked standing to proceed with the appeal in light of the bankruptcy discharge injunction of 11 U.S.C. § 524(a)(2).  To establish standing, a plaintiff must show (1) "a distinct and palpable injury"; (2) "a causal connection between the claimed injury and the challenged conduct"; and (3) "that the alleged injury is capable of being redressed by a favorable decision of the court."  **ACLU v. Darnell**, 195 S.W.3d 612, 620 (Tenn. 2006).  Ms. Khan argued that the Bank could not show "that the alleged injury [was] capable of being redressed by a favorable decision of the court[,]" because

> the United States Bankruptcy Court for the Eastern District of Tennessee . . . granted Mrs. Khan (under her own name and under the name of the 'Rafia N. Khan Irrevocable Trust') a discharge of her debts pursuant to the federal Bankruptcy Code, at 11 U.S.C. § 727.

Thus, according to Ms. Khan, the bankruptcy discharge injunction prevented enforcement of the arbitration award, which deprived the Bank of standing and deprived this Court of subject matter jurisdiction.[5]

---

[4] Pursuant to this Court's August 16, 2018 order, we take judicial notice of the briefs filed by the parties in **Khan I**, copies of which were provided by Ms. Khan in the present appeal.

[5] "[W]hen a statute creates a cause of action and designates who may bring an action, the issue of standing is interwoven with that of subject matter jurisdiction and becomes a jurisdictional prerequisite." **Metro. Gov't of Nashville v. The Bd. of Zoning Appeals of Nashville**, 477 S.W.3d 750, 756 (Tenn. 2015) (quoting **Osborn v. Marr**, 127 S.W.3d 737, 740 (Tenn. 2004)).  Here, the Bank's ability to file a petition seeking confirmation of the arbitration award is created by statute.  *See* Tenn. Code Ann. §§ 29-5-302(b),

In its reply brief, the Bank clarified that it was "not seeking to have this Court remand and order the Trial Court to confirm the arbitration award against Ms. Khan personally." Instead, the Bank was only "asking the Court to remand the case to the Trial Court with directions to confirm the final arbitration award and enter a judgment against the Trust." Citing to case law and relevant provisions of the federal bankruptcy code, the Bank also attempted to refute Ms. Khan's suggestion that the bankruptcy discharge shielded the Trust's assets merely because Ms. Khan listed the Trust as an alternate name of the "debtor" on her bankruptcy petition.

In our view, the Bank's reply brief neither "abandon[ed] an argument advanced in [its principal] brief" nor did it "advance a new argument to support an issue in the reply brief." *See* **Denver Area Meat Cutters and Employers Pension Plan v. Clayton**, 209 S.W.3d 584, 594 (Tenn. Ct. App. 2006). The Bank did not "abandon" any arguments in support of its position that the arbitrator properly exercised his authority under the Federal Arbitration Act. Nor did the Bank offer any additional reasons why the arbitrator properly exercised his authority. Instead, the Bank merely responded to the *additional* issue raised by Ms. Khan regarding the Bank's standing to proceed with the appeal in light of the bankruptcy discharge injunction. An appellant's reply brief may respond to a new issue raised by the appellee without violating Tenn. R. App. P. 27(c). *See* **Goetz v. Autin**, No. W2015–00063–COA–R3–CV, 2016 WL 537818, at *11 n.8 (Tenn. Ct. App., filed Feb. 10, 2016), *perm. app. denied* (Tenn. 2016). In responding to Ms. Khan, the Bank simply attempted to *clarify* the scope of its original claim for relief. *Cf.* **Collins v. Sams East, Inc.**, No. W2017–00711–COA–R3–CV, 2018 WL 1299857, at *3 n.3 (Tenn. Ct. App., filed Mar. 13, 2018) ("Although reply briefs are not substitutes for initial briefs, we also note that Appellant clarifies his argument in his reply brief."). Accordingly, the Bank's brief was "limited in scope to a rebuttal of the argument advanced in the appellee's brief[,]" and thus fully complied with Tenn. R. App. 27(c). Consequently, this Court did not err by sustaining the Bank's argument on appeal.

Next, Ms. Khan argues that this Court committed clear error by coming to the substantive conclusion that the Court could exercise jurisdiction over the Trust "when 'the . . . Trust' was not, in fact, a party to that appeal." We expressly rejected this argument in **Khan III**:

> Ms. Khan attempts to prove that the trial court lacked of personal jurisdiction over the trust by alleging that none of the pleadings in **Khan I** identified the "Rafia N. Khan Irrevocable Trust" as a party. We accept as a matter of fact

-312. Therefore, standing was a jurisdictional prerequisite.

that none of the previous pleadings identify "the Rafia N. Khan Irrevocable Trust" as a party. That fact, however, is insufficient as a matter of law to prove that the trial court lacked personal jurisdiction over the trust. "In most jurisdictions, a trust . . . cannot sue or be sued in its own name, and therefore, the trustee, rather than the trust, is the real party in interest in litigation involving trust property." 76 Am. Jur. 2d Trusts § 601 (West 2018). In Tennessee, for example,

> [a] claim based on a contract entered into by a trustee in the trustee's fiduciary capacity, on an obligation arising from ownership or control of trust property, or on a tort committed in the course of administering a trust, may be asserted in a judicial proceeding *against the trustee in the trustee's fiduciary capacity*, whether or not the trustee is personally liable for the claim.

> Tenn. Code Ann. § 35-15-1010(d) (2015); *see also* Rest. (Third) of Trusts § 105 (West 2012) (listing Tennessee as one of the many states which have adopted this "now-prevalent doctrine"). Here, Ms. Khan's complaint specifically alleges that all prior pleadings were filed in the name of Rafia N. Khan, individually, and "as trustee of the Rafia N. Khan Irrevocable Trust." Thus, the complaint alleges the very fact needed to assert jurisdiction over the trust.

2018 WL 4566519, at *5 (emphasis in original). We reiterated this point in our order denying Ms. Khan's petition for a rehearing:

> Ms. Khan's final argument relating to due process is also without merit. As we stated in **Khan I** and **Khan III**, the interests of the Rafia N. Khan Irrevocable Trust were adequately represented in **Khan I** because Ms. Khan brought her original suit in her name "individually, and as trustee." **Khan**, 2018 WL 4566519, at *5; **Khan**, 461 S.W.3d 505, 509 (Tenn. Ct. App. 2014). Because "the trustee, rather than the trust, is the real party in interest in litigation involving trust property," the requirements of due process (i.e., notice and a fair hearing) were satisfied. *See* **Khan**, 2018 WL 4566519, at *5 (quoting 76 Am. Jur. 2d Trusts § 601 (West 2018)).

- 9 -

Consistent with our holding in **Khan III**, we hold that this Court did not commit clear error in **Khan I** by exercising jurisdiction over the Trust.

Because Ms. Khan has failed to show why this Court's decision in **Khan I** was "clearly erroneous and would result in manifest injustice if allowed to stand," we choose to apply the law of the case doctrine and therefore affirm the trial court's order confirming the arbitration award.

**IV.**

The final issue in this appeal is whether the trial court lacked subject matter jurisdiction to award the Bank attorney's fees incurred during federal bankruptcy court proceedings. Tennessee courts follow the "American-Rule," which provides that

> a party in a civil action may recover attorney's fees only if:
> (1) a contractual or statutory provision creates a right to recover attorney's fees; or (2) some other recognized exception to the American Rule applies, allowing for recovery of such fees in a particular case.

**Eberbach v. Eberbach**, 535 S.W.3d 467, 474 (Tenn. 2017) (quoting **Cracker Barrel Old Country Store, Inc. v. Epperson**, 284 S.W.3d 303, 308 (Tenn. 2009)). In **Eberbach**, the Supreme Court explained that a prevailing party may request attorney's fees pursuant to a contractual provision, a statute, or both.[6] **Id.** at 477. "[W]hen confronted with a request for fees under both contractual and statutory authority, our courts should look to the parties' contract first before moving on to any discretionary analysis under [relevant] statutes . . . ." **Id.** at 478. However, "[i]n cases in which parties seek an award of attorney's fees under statutory authority alone, the statute governs the award of fees." **Id.** at 477.

In this case, the Bank moved the trial court "to award [the Bank] its attorney fees and costs pursuant to T.C.A. § 29-5-315." In ruling on the Bank's motion, the trial court also granted attorney's fees "[p]ursuant to Tenn. Code Ann. § 29-5-315[.]" There is no evidence in the record that the Bank has ever requested an award of post-arbitration attorney's fees pursuant to contractual provisions in the loan documents between the parties. Accordingly, we will only address whether the trial court had *statutory* authority to grant attorney's fees incurred during federal bankruptcy court proceedings pursuant to

---

[6] **Eberbach** was a post-divorce case. The "contract" at issue was a marital dissolution agreement rather than an arbitration agreement. The statutes under consideration were Tenn. Code Ann. §§ 27-1-122 and 36-5-103(c) rather than Tenn. Code Ann. § 29-5-315. Even so, we think the principles articulated by the Supreme Court in that case are applicable here.

Tenn. Code Ann. § 29-5-315 (2012). *See* Tenn. R. App. P. 13(b) ("Review generally will extend only to those issues presented for review."); Tenn. R. App. P. 36(a) ("Nothing in this rule shall be construed as requiring relief be granted to a party responsible for an error or who failed to take whatever action was reasonably available to prevent or nullify the harmful effect of an error."). This is a question of law that we review de novo.[7]

The Tennessee Uniform Arbitration Act (TUAA) confers jurisdiction on trial courts in this state "to enforce" arbitration agreements and "to enter judgment on an award[.]" Tenn. Code Ann. § 29-5-302(b). The TUAA does not expressly mention "attorney's fees." However, Tenn. Code Ann. § 29-5-315 provides that

> [u]pon the granting of an order confirming, modifying or correcting an award, judgment or decree shall be entered in conformity therewith and be enforced as any other judgment or decree. Costs of the application, and of the proceedings subsequent thereto, and disbursements may be awarded by the court.

In this case, the trial court stated that it relied on Tenn. Code Ann. § 29-5-315 to grant the Bank attorney's fees and costs incurred by the Bank "in enforcing, protecting and confirming" the arbitration award. This award included $28,321.13 against Ms. Khan individually, which, according to the trial court, was "based solely upon the attorney's fees and costs incurred by Regions in defense of the adversary case filed by Rafia N. Khan after she was granted a discharge by the Bankruptcy Court." Ms. Khan argues that Tenn. Code Ann. § 29-5-315 did not authorize the trial court to award attorney's fees and costs incurred by the Bank in the collateral bankruptcy court proceedings. The Bank argues otherwise.

This presents a question of statutory interpretation.

> Our consideration of a question of statutory construction is without any deference to the trial court. *See **In re Estate of Tanner***, 295 S.W.3d 610, 613 (Tenn. 2009). When addressing the interpretation of a statute, well-defined precepts apply. ***Colonial Pipeline***, 263 S.W.3d at 836. "Our primary objective . . . is to carry out the intent of the legislature without unduly broadening or restricting the

---

[7] The Bank mistakenly asserts that we should review the trial court's decision for abuse of discretion. The *initial* determination of whether a contract or statute "creates a right to recover attorney's fees" is a question of law that we review de novo. *See **Eberbach***, 535 S.W.3d at 479 n.7. If a contract or statute does create such a right, *then* the trial court has discretion (a) to determine whether to award attorney's fees and (b) to determine the amount of any such award. *See **id.*** Here, we are concerned with the former question of whether the trial court had *authority* to grant attorney's fees.

statute." *Nichols*, 318 S.W.3d at 359–60. When a statute is clear, we apply the plain meaning without complicating the task, and simply enforce the written language. *Abels ex rel. Hunt v. Genie Indus., Inc.*, 202 S.W.3d 99, 101–02 (Tenn. 2006) (quoting *Calaway ex rel. Calaway v. Schucker*, 193 S.W.3d 509, 516 (Tenn. 2005)). When a statute is ambiguous, however, we may refer to the broader statutory scheme, the history of the legislation, or other sources to discern its meaning. *Colonial Pipeline*, 263 S.W.3d at 836.

*Mansell v. Bridgestone Firestone North American Tire, LLC*, 417 S.W.3d 393, 400 (Tenn. 2013).

In addition to these general principles of statutory interpretation, the TUAA states that the act "shall be so construed as to effectuate its general purpose to make uniform the law of those states which enact it." Tenn. Code Ann. § 29-5-320:

It is axiomatic that a purpose in enacting uniform laws is to achieve conformity, not uniqueness. While opinions by courts of sister states construing a uniform act are not binding upon this court, we are mindful that the objective of uniformity cannot be achieved by ignoring utterances of other jurisdictions. This court should strive to maintain the standardization of construction of uniform acts to carry out the legislative intent of uniformity. This does not mean that this court will blindly follow decisions of other states interpreting uniform acts but, this court will seriously consider the constructions given to comparable statutes in other jurisdictions and will espouse them to maintain conformity when they are in harmony with the spirit of the statute and do not antagonize public policy of this state.

*Wachtel v. Shoney's, Inc.*, 830 S.W.2d 905, 909 (Tenn. Ct. App. 1991) (quoting *Holiday Inns, Inc. v. Olsen*, 692 S.W.2d 850, 853 (Tenn. 1985)).

In this case, the trial court clearly entered an "order confirming . . . an award[.]" *See* Tenn. Code Ann. § 29-5-315. The dispositive issue is whether the attorney's fees and costs incurred by the Bank in collateral bankruptcy court proceedings constitute "disbursements" or "[c]osts of the application, and of the proceedings subsequent thereto[.]" *See* Tenn. Code Ann. § 29-5-315. These terms are not defined in the TUAA.

In states that have adopted the Uniform Arbitration Act, a majority of courts that have addressed the issue have concluded that the aforementioned provision authorizes the

- 12 -

award of attorney's fees in proceedings to confirm an arbitration award.[8]  Tennessee courts follow the majority rule.[9]  **_D & E Const. Co. Inc._**, 38 S.W.3d 513, 516 n.6 (Tenn. 2001) ("A trial court has the discretion to award attorney's fees incurred in post-arbitration proceedings."); **_Lasco, Inc. v. Inman Constr. Corp._**, 467 S.W.3d 467, 476 (Tenn. Ct. App. 2015) ("remand[ing] to the trial court for entry of an order confirming the arbitration award and a determination of Appellants' reasonable attorney's fees incurred in the trial court and on appeal."); **_Alison Group Inc. v. Ericson_**, 181 S.W.3d 670, 676 (Tenn. Ct. App. 2005) ("[T]his Court and other jurisdictions have interpreted this provision of the Uniform Arbitration Act to permit an award of attorney's fees."); **_Wachtel v. Shoney's, Inc._**, 830 S.W.2d 905, 909-10 (Tenn. Ct. App. 1991) (affirming the trial court's order granting attorney's fees "incurred by plaintiffs in connection with the prosecution of their suit for confirmation of the arbitration award" and remanding for a hearing "to determine the amount of attorney['s] fees to be awarded plaintiffs for work on the appellate level").

The parties have not cited, and we have not identified, a single case from any jurisdiction in which a state court has held that the UAA authorizes an award of attorney's fees *incurred in federal bankruptcy court proceedings*.  At oral argument, the Bank conceded that its interpretation of the statute presents an issue of first impression, at least in this state.  Nevertheless, the Bank argues that the plain language of the statute as well as the general purpose of the TUAA permit such an expansive interpretation.

The Bank emphasizes that the plain language of the statute permits recovery of "[c]osts of the application, *and of the proceedings subsequent thereto*[.]"  (Emphasis added).  Because the federal bankruptcy court proceedings occurred after the Bank's application for confirmation of the award, the Bank argues that the trial court was authorized to award attorney's fees incurred during those "subsequent" proceedings.  According to the Bank, this result is consistent with the "broad construction" our courts have traditionally given to Tenn. Code Ann. § 29-5-315.

The Bank also emphasizes that the purpose of awarding attorney's fees in

---

[8] **_Anchorage Medical & Surgical Clinic v. James_**, 555 P.2d 1320, 1324 (Alaska 1976), *overruled on other grounds by **Ahtna, Inc. v. Ebasco Constructors, Inc.**,* 894 P.2d 657, 662 (Alaska 1995); **_Canon School District No. 50 v. W.E.S. Construction Co., Inc._**, 882 P.2d 1274, 1280 (Ariz. 1994); **_Driver v. SI Corp._**, 80 P.3d 1024, 1031 (Idaho 2003); **_Blitz v. Beth Isaac Adas Israel Congregation_**, 720 A.2d 912, 918–19 (Md. 1998); **_County of Clark v. Blanchard Construction Co._**, 653 P.2d 1217, 1220 (Nev. 1982). *But see **Inter'l Fed'n of Prof'l and Tech. Eng'rs, Local 153 v. Chicago Park Dist.**,* 812 N.E.2d 407, 412 (Ill. App. Ct. 2004); **_Terra West Townhomes, L.L.C. v. Stu Henkel Realty_**, 996 P.2d 866, 873 (Mont. 2000).

[9] We pause to note that some courts locate the authorization to award attorney's fees in the term "disbursements" rather than in the phrase "costs of the application, and of the proceedings subsequent thereto."  Tennessee courts, however, have not distinguished between the terms "costs" and "disbursements."

confirmation proceedings is "encouraging early payment of valid arbitration awards and the discouragement of non-meritorious protracted confirmation challenges." **Steer v. Eggleston**, 47 P.3d 1161, 1166 (Ariz. Ct. App. 2002). According to the Bank, Ms. Khan's decision to initiate an adversary proceeding against the Bank in federal bankruptcy court is the exact type of "non-meritorious protracted confirmation challenge[]" that Tenn. Code Ann. § 29-5-315 is designed to discourage. In addition, the Bank argues that a contrary interpretation "would emasculate the statute, permitting a litigant to escape the financial consequences of protracted litigation over an arbitration award simply by filing a collateral action."

We are not persuaded by the Bank's arguments. First, we do not think the plain language of the statute inexorably leads to the conclusion that "proceedings subsequent" to the application for confirmation of an award include collateral bankruptcy court proceedings. Neither "subsequent" nor "proceedings" is defined in the TUAA. Therefore, we must give those words "their natural and ordinary meaning, without forced or subtle construction that would limit or extend the meaning of the language, except when a contrary intention is clearly manifest." Tenn. Code Ann. § 1-3-105(b) (Supp. 2018).

In the legal profession, the word "subsequent" generally means: "occurring later; coming after something else." *Subsequent*, Black's Law Dictionary (10th ed. 2014). In terms of pure timing, there is no question that the bankruptcy court proceedings occurred after the Bank filed its application for confirmation of the arbitration award. The Bank would have us stop there, but we must also ascertain the meaning of the word "proceedings." In the legal profession, a "proceeding" generally refers to the "[t]he regular and orderly progression of a lawsuit, including all acts and events between the time of commencement and the entry of judgment." *Proceeding*, Black's Law Dictionary (10th ed. 2014). Even with this definition in mind, it is unclear whether "proceedings," as used in Tenn. Code Ann. § 29-5-315, refers to "acts and events" that take place *collateral to* activities in the trial court. Because of this ambiguity, "we may refer to the broader statutory scheme, the history of the legislation, or other sources to discern its meaning." **Mansell, LLC**, 417 S.W.3d at 400.

Looking to the broader statutory scheme, the TUAA only identifies a handful of "proceedings" that relate to the confirmation of an arbitration award. Those proceedings include: applications for the confirmation of an award, applications for the vacatur, modification, or correction of an award, and direct appeal from an order arising out of the aforementioned applications. *See* Tenn. Code Ann. §§ 29-5-312, -313, -314, 319. Under the TUAA, each "application" "shall be by motion and shall be heard in the manner and upon the notice provided by law or rule of court for the making and hearing of motions." Tenn. Code Ann. § 29-5-317. This statutory scheme leads us to believe that the word "proceedings," as used in Tenn. Code Ann. § 29-5-315, refers to the motions and hearings specifically identified in the TUAA that follow a party's initial application for

- 14 -

confirmation of an arbitration award. In context, the word "proceedings" does not refer to *any* proceeding filed in *any* court at *any* time after the application for confirmation of an arbitration award.[10]

We agree with the Bank that the purpose of awarding attorney's fees in confirmation proceedings is to encourage payment of arbitration awards and to discourage frivolous litigation. If the legislature thinks that this policy would be further served by authorizing the award of attorney's fees incurred in collateral bankruptcy proceedings, it may pass such a statute. For the reasons discussed above, however, we do not think the legislature intended the TUAA to be such a statute.

Finally, the Bank's concern about forum shopping is misplaced. In this case, Ms. Khan initiated the adversary bankruptcy proceeding *after* the trial court ruled in her favor and vacated the arbitration award. The award remained vacated throughout the bankruptcy court proceedings. From Ms. Khan's perspective, she was not seeking an alternative forum to obtain a better outcome; she was simply asking the bankruptcy court to effectuate the trial court's judgment by disallowing the arbitration award.

Additionally, bankruptcy courts may now award attorney's fees to the prevailing party in an adversary proceeding. Fed. R. Bankr. P. 7054(b)(2)(A) (amended Apr. 25, 2014, eff. Dec. 1, 2014). Therefore, if a party does attempt to resist enforcement of an arbitration award by filing a non-meritorious adversary proceeding in bankruptcy court, the opposing party can request attorney's fees *from the bankruptcy court*. Although this remedy was not available to the Bank at the time of the bankruptcy proceedings in this case, it should allay concerns about future forum shopping. In any event, our holding is not dependent on the availability of remedies in other courts; instead, our decision is rooted in the firmly-established principle that attorney's fees may not be awarded in Tennessee absent contractual agreement, statutory authorization, or some other judicially-recognized exception to the "American Rule."

The Bank did not seek post-arbitration attorney's fees pursuant to a contractual agreement. Because we have determined that the trial court lacked the statutory authority to award attorney's fees incurred during federal bankruptcy court proceedings, we vacate the portion of the court's order providing for such an award. Accordingly, the court's order awarding attorney's fees is hereby modified to include attorney's fees incurred by the Bank in the trial court and on direct appeal but not attorney's fees incurred by the Bank in federal bankruptcy court proceedings.

---

[10] For similar reasons, we also decline to construe the term "disbursements" so broadly as to include attorney's fees incurred in collateral actions not specifically mentioned in the TUAA.

## V.

The judgment of the trial court is affirmed as modified. Costs on appeal are taxed fifty percent (50%) to the appellant, Rafia N. Khan, Individually, and in her capacity as Trustee of the Rafia N. Khan Irrevocable Trust, and fifty percent (50%) to the appellee, Regions Bank. The case is remanded for enforcement of the trial court's orders as modified by this Court's opinion, and for collection of costs assessed below.

_____
CHARLES D. SUSANO, JR., JUDGE